UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT RAYMOND RAETHKE,

      Petitioner,

 v.

JERI BOE,

      Respondent.

Case No. 2:19-cv-00733-JCC-BAT

**REPORT AND RECOMMENDATION**

Petitioner Robert Raymond Raethke seeks 28 U.S.C. § 2254 habeas relief from his jury conviction of second-degree assault with sexual motivation and sentencing as a persistent offender under Washington's Persistent Offender Accountability Act (POAA). He contends: (1) an erroneous reasonable-doubt jury instruction violated his due process rights; (2) his double jeopardy rights were violated; (3) no jury finding regarding his sentence as a persistent offender violated his Sixth Amendment rights; and (4) the evidence at trial was constitutionally insufficient to support his conviction. Dkt. No. 4-1, pp. 4-21.

The Court recommends the habeas petition be **denied** because Petitioner has failed to demonstrate that the state-court adjudication of his grounds for relief was contrary to, or an unreasonable application of, established federal law, or was an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)–(2). The Court also

REPORT AND RECOMMENDATION- 1

recommends **denying** an evidentiary hearing and issuance of a certificate of appealability.

## BACKGROUND

The Washington Court of Appeals summarized the facts of Petitioner's crime, trial, and sentencing in its opinion on direct appeal:

> On April 30, 2014, A.C. was walking her dog along the Arlington Airport Trail when she encountered Raethke. Raethke told A.C. that she was beautiful and asked for a hug. Raethke grabbed A.C. in a hug and began kissing her on the neck and cheek. Although A.C. repeatedly shoved Raethke and told him to let her go, Raethke held on for seven to ten seconds. After Raethke let go of her, A.C. told him she was going to call the police and Raethke ran away. Later, A.C told Officer Peter Barrett that she thought she was going to be raped when Raethke was hugging and kissing her.
>
> The State charged Raethke with second degree assault with sexual motivation based on intent to commit indecent liberties by forcible compulsion. The State noted that, if convicted, Raethke would be a persistent offender under the POAA [Persistent Offender Accountability Act] and would be sentenced to life in prison without the possibility of parole.
>
> Prior to trial, the State moved to admit evidence of Raethke's prior convictions of first degree rape and attempted first degree rape, including testimony of his prior victims S.C., K.D., and M.H. The trial court admitted the prior victims' evidence under ER 404(b) on the issue of Raethke's intent to commit indecent liberties and so that the jury could evaluate whether the crime was sexually motivated.
>
> At trial, S.C., M.H., and K.D. testified that Raethke had grabbed them on wooded trails and taken them into the woods to sexually assault them.
>
> The jury found Raethke guilty of assault in the second degree, and found that he committed the crime with sexual motivation.
>
> At Raethke's sentencing, the State offered a certified copy of his prior judgments and convictions for first degree rape and attempted first degree rape.
>
> The trial court sentenced Raethke to life without the possibility of parole as a persistent offender under the POAA.

Dkt. 10, Ex. 12 (unpublished opinion), at 1-2.

## EXHAUSTION

REPORT AND RECOMMENDATION- 2

Respondent does not argue Petitioner's grounds for relief are unexhausted or untimely. Therefore, the claims are properly before the Court and the Court need not recite the state court procedural history.

**EVIDENTIARY HEARING**

The court retains the discretion to conduct an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

The Court need not conduct an evidentiary hearing in this case as Petitioner's habeas claims do not require further factual development and may be resolved by a review of the record developed by the Washington Court of Appeals in Petitioner's direct appeal. *See Cullen v. Pinholster*, 563 U.S. 170 (2011) (Court's review in determining whether relief is available under 28 U.S.C. § 2254(d)(1) is limited to the state court record).

**HABEAS REVIEW STANDARD**

A federal Court may not grant habeas relief unless the state court decision: "(1) was contrary to clearly established federal law as determined by the Supreme Court, (2) involved an unreasonable application of such law, or (3) . . . was based on an unreasonable determination of the facts in light of the record before the state court." *See Fairbank v. Ayers*, 650 F.3d 1243, 1251 (9th Cir. 2011) (as amended); 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is contrary to clearly established federal law if it contradicts the law set forth by the United States Supreme Court, or reaches a result different than that reached

by the Supreme Court on materially indistinguishable facts. *See Terry Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state court's decision is an unreasonable application of clearly established federal law when the state court identifies the correct legal rule, but applies it to a new set of facts in a way that is objectively unreasonable. *See id*. at 407.

When determining whether a state court unreasonably determined the facts, "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller–El I*, 537 U.S. 322, 340 (2010). State court factual findings are presumed correct and this is a presumption the petitioner must overcome by clear and convincing evidence. *Davis v. Ayala*, 135 S. Ct. 2187, 2199–2200 (2015) (quotation and citation omitted).

## DISCUSSION

**A.     Claim 1 – Instruction 3 (Reasonable Doubt Instruction)**

Petitioner claims that the reasonable-doubt jury instruction used at his trial violated due process because it incorrectly defined reasonable doubt in terms of whether the jury had "an abiding belief in the truth of the charge." Dkt. No. 4-1, at 4-7. Instruction 3 given to Petitioner's jury was based on Washington Practice Pattern Jury Instructions—Criminal (WPIC) 4.01:

> The defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.

> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the evidence or lack of evidence. *If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt*.

Dkt. 10, Ex. 6 at Instruction 3 (emphasis added). Petitioner objects to the language in Instruction 3, which is italicized above. He contends that it confused the critical role of the jury and encouraged the jury to undertake an impossible search for the truth. Dkt. 4-1, p. 5.

In criminal trials, the Due Process Clause of the Fourteenth Amendment protects the accused from conviction unless the prosecution "persuade[s] the factfinder beyond a reasonable doubt of the facts necessary to establish" each element of the offense charged. *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993) (internal quotation marks omitted); *see also In re Winship*, 397 U.S. 358, 364 (1970). A jury instruction that permits conviction on a lesser standard—by shifting the burden of proof from the prosecution to the defendant, or by suggesting that a higher degree of doubt than reasonable doubt is necessary for acquittal—is constitutionally deficient, and any such deficiency is structural error that is not amenable to harmless error analysis. *Sullivan*, 508 U.S. at 278-80.

While the beyond a reasonable doubt standard is a requirement of due process, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt. *Taylor v. Kentucky*, 436 U.S. 478, 485–486, 98 S.Ct. 1930, 1934–1935, 56 L.Ed.2d 468 (1978); *Jackson v. Virginia*, 443 U.S. 307, 320, n. 14, 99 S.Ct. 2781, 2789, n. 14, 61 L.Ed.2d 560 (1979). Rather, "taken as a whole, the

REPORT AND RECOMMENDATION- 5

instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).

For a court to conclude that a reasonable-doubt instruction is constitutionally deficient, "there [must be] a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor v. Nebraska*, 511 U.S. 1, 6, 114 S.C. 1239, 127 L.Ed.2d 583 (1994). For example, in *Cage v. Louisiana*, 498 U.S. 39 (1990) (per curiam), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the challenged instruction combined the terms "actual substantial doubt," "grave uncertainty," and "moral certainty" in a manner that could have led a reasonable juror to find guilt based on a degree of proof less than reasonable doubt. *Id*. at 40-41. However, use of the phrase "abiding belief" or "abiding conviction" in the truth of the charge raises no such concerns and in fact, the challenged reasonable-doubt instruction in *Victor* contained "truth of the charge" language:

> Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel *an abiding conviction, to a moral certainty, of the truth of the charge.*

*Victor*, 511 U.S. at 7 (emphasis added).[1] In *Victor*, the Supreme Court stated that "an instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly

---

[1] Although the instructions in *Victor* contained the same "moral certainty" and "substantial doubt" language used in *Cage* (*see Cage*, 498 U.S. at 41 (overturning the conviction because reasonable doubt instructions containing "moral certainty" and "substantial doubt" language were unconstitutional)), the Supreme Court reasoned that, unlike the *Cage* instructions, the objectionable language in *Victor* "impressed upon the factfinder the need to reach a subjective state of near certitude" when viewed in conjunction with other, constitutionally permissible instructions that were given. *Victor,* 511 at 159.

REPORT AND RECOMMENDATION- 6

states the government's burden of proof." *Id*. at 14-15. *See also Rhoades v. Henry*, 638 F.3d 1027, 1043 & n.14 (9th Cir. 2011) (rejecting challenge to instruction containing the phrase "abiding conviction to a moral certainty of the truth of the charge"); *Leavitt v. Arave*, 383 F.3d 809, 822 & n.5 (9th Cir. 2004) (rejecting challenge to instruction advising the jury to acquit if it "entertain[ed] a reasonable doubt of the truth of anyone of these material allegations."); *Lisenbee v. Henry*, 166 F.3d 997, 999-1000 (9th Cir. 1999) (rejecting challenge to an instruction using the term "abiding conviction" to define the reasonable doubt standard); *Ramirez v. Hatcher*, 136 F.3d 1209, 1214 (9th Cir. 1998) (rejecting challenge to instruction in which "[t]he jurors were told they must have 'an abiding conviction of the truth of the charge,' *i.e.*, of defendant's guilt, a correct formulation of the government's burden of proof under *Victor*.").

When Petitioner raised this claim on direct appeal, the Washington Court of Appeals held that the language used in Instruction 3 is consistent with the reasonable-doubt instruction upheld by the Supreme Court in *Victor* and that Washington courts have repeatedly held that WPIC 4.01 correctly defines the concept of reasonable doubt:

> Jury instructions "must convey to the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt." State v. Bennett, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).
> . . . .
> Here, the trial court's reasonable doubt instruction was identical to WPIC 4.01, including the bracketed "abiding belief in the truth of the charge" language. Bennett approved of WPIC 4.01, including the "abiding belief in the truth of the charge" language, and has not been overturned. WPIC 4.01 has not been replaced with a new reasonable doubt instruction. We are bound by Bennett, and conclude that the trial court did not err when it gave the jury a reasonable doubt instruction based on WPIC 4.01.

Dkt. 10, Ex. 12 (unpublished opinion) at 3-4 (footnote omitted).

The Washington Court of Appeals' decision is consistent with *Victor* and the case law upon which the decision is based is rooted in "clearly established Federal law" for § 2254(d)

REPORT AND RECOMMENDATION- 7

purposes. *See Bennett*, 161 Wash. 2d 303, 318 (citing *Victor*, expressly approving WPIC 4.01 and instructing lower state courts to continue to use that instruction in every case).

Instruction 3 would not have left jurors confused about their duty to acquit if they entertained a doubt that was reasonable. Thus, the Washington Court of Appeals did not err in concluding that the reasonable-doubt instruction used in Petitioner's case was not constitutionally defective, and it is recommended that Petitioner be denied habeas relief as to Claim 1.

**B.     Claim 2 – Double Jeopardy**

Petitioner claims his double jeopardy rights were violated when the same fact was used to satisfy an element of his underlying crime (second-degree assault with sexual motivation) and to make him eligible for persistent offender sentencing. Dkt. No. 4, at 10; Dkt. No. 4-1, at 2. Based on Petitioner's previous convictions for sex offenses, he was sentenced to life imprisonment without the possibility of parole as a persistent offender. *See* Wash. Rev. Code §§ 9.94A.030(38)(b) and 9.94A.570; Dkt. 10, Ex. 7 (Judgment and Sentence).

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This principle applies to state criminal prosecutions through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 795-96 (1969). The guarantee against double jeopardy includes three distinct constitutional protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (*quoting Brown v. Ohio*, 432 U.S. 161, 165 (1977)).  The Double Jeopardy Clause does no more than prevent the sentencing court from

REPORT AND RECOMMENDATION- 8

imposing greater punishment than the legislature intended. *Missouri v. Hunter*, 459 U.S. 359, 368 (1983).

The Washington Court of Appeals concluded Petitioner's double jeopardy challenge was without merit because he received a single sentence for a single crime:

> Here, Raethke's sentence of life without the possibility of parole based on his second strike offense under the POAA does not violate his right against double jeopardy. Raethke was charged with and convicted of assault in the second degree with the intent to commit indecent liberties by forcible compulsion. He had previously been convicted of first degree rape and attempted first degree rape. Thus, his present conviction for assault in the second degree with sexual motivation qualified as a second strike requiring a sentence of life without the possibility of parole under the POAA. RCW 9.94A.030(38)(a)(i),(b)(i); *see also* RCW 9A.36.021(1)(e).
>
> Raethke received a sentence of life without the possibility of parole as a persistent offender under the POAA. He did not receive a separate sentence for assault in the second degree. Thus, he has received a single sentence for a single offense. We conclude that Raethke's right against double jeopardy was not implicated in the present case.[4] See Jones v. Thomas, 491 U.S. 376, 382 n.2, 109 S. Ct. 2522, 105 L. Ed. 2d 322 (1989). Thus, we need not determine whether Raethke's sentence was supported by clear legislative intent or apply the Blockburger test.
>
> [4] [Court's footnote]: Raethke also argues that his right against double jeopardy was violated because the finding of sexual motivation both satisfied an element of his underlying crime and was used as a sentencing enhancement of sexual motivation under the POAA, relying on federal case law. The Washington Supreme Court has previously rejected the argument that using the same fact as both an element of the underlying offense and as an enhancement violates double jeopardy. See Kelley, 168 Wn.2d at 76 (stating that imposing a sentencing enhancement based on the same facts as an element of the underlying crime does not violate double jeopardy, acknowledging Apprendi, 530 U.S. 466, Blakely, 542 U.S. 296, and Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002)). We follow the Washington Supreme Court's precedent and reject Raethke's argument.

Dkt. 10, Ex. 12, at 8-9 & n.4.

Under Wash. Rev. Code § 9.94A.030(38)(b)—commonly referred to as the "two-strike" sentencing law—a person is a persistent offender if he is convicted of certain specified offenses

REPORT AND RECOMMENDATION- 9

and has a prior conviction for one of the same offenses. Second-degree assault with a finding of sexual motivation is specifically listed as a potential "two-strike" offense. *See* Wash. Rev. Code § 9.94A.030(38)(b)(i). Here, although Petitioner was sentenced as a persistent offender, there was no "multiple punishment" as Petitioner received only one punishment — a life sentence. The imposition of a single sentence for a single crime does not constitute double jeopardy. *See Jones v. Thomas*, 491 U.S. 376, 382 n. 2 (1989) ("[e]ven if the Double Jeopardy Clause provided an absolute bar to multiple punishments in a single trial regardless of legislative intent, the fact would remain that respondent is now serving only a single sentence for a single offense." *Id.* (internal citations omitted)).

The Washington Supreme Court has also rejected the argument that double jeopardy principles are violated by the use of the same facts as both an enhancement and an element of the underlying offense. Rather, if the legislature intended to allow such "double counting," there is no constitutional obstacle to doing so. *State v. Kelley*, 168 Wash. 2d 72, 78, 226 P.3d 773 (2010). Under Wash. Rev. Code § 9.94A.835, a sexual motivation allegation can be filed "in every criminal case . . . other than sex offenses as defined in RCW 9.94A.030." In *State v. Thomas*, the Washington Supreme Court held that the sexual-motivation aggravating factor could be applied to felony murder predicated on rape. 138 Wn.2d 630, 636-37, 980 P.2d 1275 (1999). Based on *Thomas*, the sexual-motivation aggravating factor can be applied to a second-degree assault committed for sexual gratification.

The Washington Court of Appeals also correctly concluded that the *Blockburger*/"same evidence" test does not apply to Petitioner's conviction as that test is used when a defendant has been punished or subjected to successive prosecutions for two offenses. *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. U.S.*, 284 U.S. 299, 52 S.C. 180, 76 L.Ed. 306

(1932) (Test of identity of offenses is whether each separate statutory provision requires proof of additional fact which other does not.)). Here, Petitioner received a sentence of life without the possibility of parole as a persistent offender under the POAA. He did not receive a separate sentence for assault in the second degree.

Finally, the Washington Court of Appeals determined that the Washington State Legislature authorized the type of sentence Petitioner received. A state court's interpretation of state law is binding in a habeas proceeding (*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and "[a] state court has the last word on the interpretation of state law." *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002).

No clearly established United States Supreme Court holds that imposing a life sentence in circumstances like Petitioner's violates double jeopardy. The Washington Court of Appeals did not err in concluding that Petitioner's sentence did not violate double jeopardy. Accordingly, it is recommended that Petitioner be denied habeas relief as to Claim 2.

**C.     Claim 3 – Sixth Amendment (Persistent Offender Sentencing)**

In his third ground for relief, Petitioner asserts that the state trial court violated due process and the Sixth Amendment by imposing a sentence under the POAA in the absence of a jury finding that Petitioner was a persistent offender and had a prior "strike" conviction. Dkt. No. 4-1, at 18. The Washington Court of Appeals rejected this claim:

> The Sixth Amendment provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.' This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." Alleyne v. United States, 570 U.S. 99, 133 S. Ct. 2151, 2156, 186 L. Ed. 2d 314 (2013). "[A]ny fact that increases the [mandatory minimum sentence of the crime] is an 'element' that must be submitted to the jury." Alleyne, 133 S. Ct. at 2155. But the fact of a prior conviction does not need to be submitted to a jury and proved beyond a reasonable doubt, even if it may increase the penalty for the crime at issue beyond the statutory maximum. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435

REPORT AND RECOMMENDATION- 11

(2000); see also Blakely v. Washington, 542 U.S. 296, 308, 313-14,124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (holding that a sentence above the statutory maximum based on the sentencing judge's finding of deliberate cruelty violated the defendant's Sixth Amendment rights, but not questioning Apprendi's exception for prior convictions).

"[F]or the purposes of the POAA, a judge may find the fact of a prior conviction by a preponderance of the evidence." State v.Witherspoon, 180 Wn.2d 875, 892, 329 P.3d 888 (2014). The POAA does not violate state or federal due process by not requiring that a jury must find the existence of prior strike offenses beyond a reasonable doubt. Witherspoon, 180 Wn.2d at 891-92 (discussing Alleyne, 570 U.S. 99, Blakely, 542 U.S. 296, and Apprendi, 530 U.S. 466).

"The State bears the burden of proving by a preponderance of the evidence the existence of prior convictions as predicate strike offenses for purposes of the POAA." *Witherspoon*, 180 Wn.2d at 893 (citing State v. Knippling, 166 Wn.2d 93, 100, 206 P.3d 332 (2009)). "`The best evidence of a prior conviction is a certified copy of the judgment."' *State v. Hunley*, 175 Wn.2d 901, 910, 287 P.3d 584 (2012) (quoting *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)).

Constitutional issues are questions of law that are reviewed de novo on appeal. State v. Gresham, 173 Wn.2d 405, 419, 269 P.3d 207 (2012).

Here, prior to Raethke's sentencing, the State introduced a certified copy of Raethke's prior judgments convicting him of four counts of first degree rape and one count of attempted first degree rape. At the sentencing hearing, the trial court said that it had received the certified copy of the prior judgments before stating that it found Raethke to be a persistent offender. Thus, the State met its burden of proving Raethke's previous strike offenses by a preponderance of the evidence. We conclude that trial court did not violate Raethke's due process and Sixth Amendment rights when it did not require the jury to find the existence of his prior convictions beyond a reasonable doubt.

Dkt. 10, Ex. 12, 6-7.

The Sixth Amendment right to a jury trial and the Due Process Clause of the Fourteenth Amendment are applicable to criminal sentencing and require that a jury must find beyond a reasonable doubt any fact, other than a prior conviction, that results in a sentence that exceeds the statutory maximum for that offense. *Apprendi v. New Jersey*, 530 U.S. 466 (2000). "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

REPORT AND RECOMMENDATION- 12

doubt." *Apprendi*, 530 U.S. at 490 (emphasis added). The relevant "statutory maximum" under *Apprendi* embraces not only the traditional statutory maximum punishment for the offense, but also the high end of a legislatively prescribed sentencing range. *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004) (applying *Apprendi* to presumptive sentencing ranges under Washington's Sentencing Reform Act). "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (emphasis in original). In *Ring v. Arizona*, 536 U.S. 584 (2002), the Court extended the *Apprendi* rule to capital sentencing proceedings, but the Court did not abandon the exception allowing increased sentences based upon "the fact of a prior conviction."

Petitioner had prior convictions from 1985 for four counts of first-degree rape and one count of attempted first-degree rape. Dkt. 10, Ex. 7, at 2. Under Washington law, a defendant is a persistent offender and therefore subject to the "two strike" sentencing provision if he is convicted of certain specified offenses and has a prior conviction for one of the listed offenses. Wash. Rev. Code § 9.94A.030(38)(b). Second-degree assault with a finding of sexual motivation, Petitioner's crime of conviction, is a potential "two-strike" offense. Wash. Rev. Code § 9.94A.030(38)(b)(i).

At the sentencing hearing, the prosecutor presented certified copies of Petitioner's prior convictions and asked that the court impose a life-without-parole sentence. Dkt. 10, Ex. 5 (sentencing transcript), at 1077, 1082. Defense counsel did not object and acknowledged that, based on Petitioner's prior convictions, the court had no discretion under Washington law—the court was required to impose a persistent offender sentence. *Id*. at 1080. The court imposed a

sentence of life without the possibility of parole based on its finding that Petitioner was a persistent offender. *Id.* at 1083; Ex. 7, at 5-6 ¶ 4.5.

Under *Apprendi* and *Blakely*, the fact of the defendant's prior convictions may be determined by the sentencing judge and need not be submitted to a jury. Washington courts have repeatedly held, consistent with *Apprendi*, that no jury proceeding is required and that a judge, alone, may find the fact of a prior strike offense by a preponderance of the evidence. *State v. Witherspoon*, 180 Wash. 2d 875, 891-93, 329 P.3d 388 (2014) (citing *Apprendi*; *Blakely*; *Alleyne v. United States*, 570 U.S. 99 (2013)). "[I]t is settled law in this state that the procedures of the POAA do not violate federal or state due process. Neither the federal nor state constitution requires that previous strike offenses be proved to a jury." *Id.* at 893.

The Washington Court of Appeals correctly applied clearly established Supreme Court precedent, which holds that a sentencing court's findings concerning the existence of prior convictions are not subject to the jury requirement or the reasonable doubt standard. Accordingly, it is recommended that Petitioner's be denied habeas relief as to Claim 3.

**D.    Claim 4 – Insufficiency of Evidence (Second-Degree Assault With Intent to Commit Indecent Liberties)**

Petitioner contends that the evidence presented at his trial was insufficient to support his conviction for second-degree assault with the intent to commit indecent liberties as his actions were nothing more than a prolonged hug of A.C. Dkt. No. 4-1, at 19-20. Petitioner raised his insufficiency of evidence claim to the Court of Appeals in his pro se statement of additional grounds. Dkt. 10, Ex. 9 (statement of additional grounds). There, he argued that the evidence showed only that he gave A.C. an innocent "bear hug" and a kiss on the neck—nothing like the rapes he had committed in 1982 and 1983 in which he wore a ski mask and used rope to tie his victims. *Id.* The Court of Appeals rejected this claim:

REPORT AND RECOMMENDATION- 14

> Here, A.C. testified that she did not consent to being hugged or kissed by Raethke. A.C. testified that Raethke held her for seven to ten seconds in spite of her attempts to shove him away and her telling him to let her go. A.C. also testified that she thought she was going to be raped when she was being hugged and kissed by Raethke. Raethke's prior victims testified that Raethke's actions in the present case were similar to when he sexually assaulted them.
>
> Viewing this evidence in the light most favorable to the State, the record contains sufficient evidence to sustain Raethke's conviction of second degree assault with the intent to commit indecent liberties. Raethke assaulted A.C. when he hugged and kissed her without her consent, and acted with forcible compulsion when he held on to her despite her physical resistance. There is a reasonable inference from the testimony of A.C. and Raethke's prior victims that Raethke acted with intent to touch A.C.'s "sexual or other intimate parts ... for the purpose of gratifying" his sexual desire. RCW 9A.44.010(2). Thus, a rational trier of fact could have found the essential elements of Raethke's offense beyond a reasonable doubt. We reject Raethke's argument.
>
> Raethke analogizes to State v. R.P. to argue that his actions were insufficient to constitute indecent liberties. 122 Wn.2d 735, 736, 862 P.2d 127 (1993) (holding that there was insufficient evidence of sexual contact to sustain conviction of indecent liberties when offender left a "hickey" on victim's neck area). This is unpersuasive. Raethke was convicted of second degree assault with the intent to commit indecent liberties, not indecent liberties itself. The fact that his actions were insufficient to constitute indecent liberties is irrelevant to determining whether he acted with intent to commit indecent liberties. We reject this argument.

Dkt. 10, Ex. 12 (unpublished opinion) at 10-11.

The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v.*

REPORT AND RECOMMENDATION- 15

*Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319). The trier of fact is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992).

"A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree . . . [w]ith intent to commit a felony, assaults another[.]" Wash. Rev. Code § 9A.36.021(1)(e). The underlying felony Petitioner was alleged to have intended—indecent liberties by forcible compulsion—occurs when the defendant "knowingly causes another person to have sexual contact with him or her or another … [b]y forcible compulsion[.]" Wash. Rev. Code § 9A.44.100(1)(a). "Sexual contact," as used in that statute, means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." Wash. Rev. Code § 9A.44.010(2). "Forcible compulsion" is defined as "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped." Wash. Rev. Code § 9A.44.010(6). The jury received instructions on the elements of the crime and definitions of the elements. Dkt. 10, Ex. 6 (court's instructions to the jury), Instructions 8-16.

The jury heard the testimony of Petitioner's victim, A.C. Dkt. 10, Ex. 1 (transcript for Feb. 24, 2016), at 672-726. On April 30, 2014, A.C. was alone and walking her dog on a wooded trail near the Arlington airport when she crossed paths with an older man, Petitioner. *Id*. at 674-77. Petitioner walked up to her, commented five or six times that he thought she was beautiful, and asked for a hug. *Id*. at 679-81. A.C. thought the request was odd, but based on her experience with elderly adults from her work at a retirement home, she consented. *Id*. at 681. Petitioner then grabbed A.C. around the waist, pressed his body against hers and tightly squeezed her, and began

kissing her on the neck and cheek. Id. at 682, 685. A.C. instantly became scared and struggled to escape Petitioner's clutches, yelling at him several times, "Get off me. What are you doing? Get off me." Id. at 682-84, 686. A.C. feared Petitioner would try to rape her. *Id*. at 685. She was finally able to push Petitioner away and yelled at him, "What is wrong with you?" *Id*. at 684. The "hug" lasted somewhere between seven and ten seconds. *Id*. at 683. A.C. told him she was going to call the police. *Id*. Petitioner did not leave immediately but rather remained close to A.C., smiling or smirking at her. *Id*. He fled on foot, however, as soon as A.C. actually pulled out her phone. *Id*. She called the police shortly after he fled and made a report. *Id*. at 687-88. Later, at her mother's suggestion, A.C. looked through the online registry of Snohomish County sex offenders and identified Petitioner from his online photo. *Id*. at 695-96.

The jury heard that Petitioner was on parole supervision by the Department of Corrections at the time of the crime and was required to wear a GPS ankle monitor. Dkt. 10, Ex. 2 (transcript for Feb. 25, 2016), at 834-36. Petitioner's community corrections officer determined from the GPS monitoring data that in the late afternoon of April 30, 2014, Petitioner was at the trails near the Arlington airport. *Id*. at 836-37. The community corrections officer arrested Petitioner for violating the terms of his supervision. At the time of the arrest, Petitioner's hair was a brownish-red color, not the usual gray. *Id*. at 838. Petitioner's cousin testified that she dyed Petitioner's gray hair to a darker color on or about May 3, 2014, before he was arrested. Dkt. 10, Ex. 3 (transcript for Feb. 26, 2016), at 1001-02.

Petitioner at first denied any involvement with the offense, but later admitted he had made some bad choices and fallen back into his old patterns of behavior, and he admitted kissing the victim. *Id*. at 839-40. The jury also heard the testimony of three of Petitioner's rape victims

REPORT AND RECOMMENDATION- 17

from the 1980s, S.C., M.H., and K.D. Before each witness's testimony, the trial court gave the following limiting instruction:

> Members of the jury, the following testimony is being admitted in this case for only a limited purpose.
>
> This evidence consists of testimony about Mr. Raethke's past convictions from the early 1980s and may be considered by you only for the purpose of evaluating the proof of his intent to commit indecent liberties by forcible compulsion and the allegation that the crime was sexually motivated. You may not consider it for any other purpose.
>
> Evidence of a past crime is not admissible to prove a person's character in order to show that on a particular occasion a person acted in accordance with that crime or other act.

Dkt. 10, Ex. 2, at 926-27; 943; 954; *see also* Dkt. 10, Ex. 6, Instruction 7.

S.C. testified that in 1982, when she was 14 years old, she was confronted by Petitioner one day when she was walking by herself along a wooded trail. Dkt. 10, Ex. 2 at 933-34. He grabbed S.C., put his hand over her mouth, tied her hands, and raped her. *Id*. at 934-40. S.C. asked him why he was doing this to her and Petitioner told her it was because she was a pretty girl and she was alone. *Id*. at 938. M.H. and K.D., who were also 14 years old at the time they were raped, gave similar accounts of being attacked while they were walking alone on a wooded trail. *Id*. at 947-52 (M.H. testimony); *id*. at 957-64 (K.D.'s testimony).

Based on this testimony, a rational finder of fact could conclude that Petitioner in fact committed a second-degree assault of A.C. and that he intended to commit the felony of indecent liberties by forcible compulsion—"knowingly causing another person to have sexual contact with him or her or another . . . [b]y forcible compulsion," in accordance with Wash. Rev. Code §§ 9A.36.021(1)(e) and 9A.44.100(1)(a). The jury was entitled to find that Petitioner's actions amounted to more than an innocent embrace and that Petitioner had the intent to commit the crime of indecent liberties with forcible compulsion.

REPORT AND RECOMMENDATION- 18

The Court of Appeals correctly applied the *Jackson* standard to the facts of Petitioner's case with explicit reference to the substantive elements of the crimes and properly adjudicated his sufficiency claims. It is recommended that Petitioner's fourth ground for relief be denied.

**E.    Certificate of Appealability**

If the district court adopts the Report and Recommendation, it must determine whether a certificate of appealability ("COA") should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court recommends Petitioner not be issued a COA. No jurist of reason could disagree with this Court's evaluation of his habeas claims or would conclude that the issues presented deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## CONCLUSION

The Court recommends **DENYING** petitioner's habeas petition on the merits without an evidentiary hearing, and **DENYING** the issuance of a certificate of appealability.

Any objections to this Recommendation must be filed and served upon all parties no later than **October 3, 2019.**  The Clerk should note the matter for **October 7, 2019,** as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due

REPORT AND RECOMMENDATION- 19

within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve (12) pages. The failure to timely object may affect the right to appeal.

DATED this 13th day of September, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION- 20